IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN POSTAL WORKERS UNION, )
O'HARE MIDWAY "T" LOCAL 7011 ET AL., )
)
      Plaintiff, )
)
  vs. ) No. 13 C 7281
)
AMERICAN POSTAL WORKERS UNION, )
AFL-CIO )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    American Postal Workers Union, O'Hare Midway "T" Local 7011 and several of its officers and members (collectively referred to as Local 7011) have sued the American Postal Workers Union, AFL-CIO (APWU), alleging violations of section 301 of the Labor Management Relations Act. 29 U.S.C. § 185. APWU has moved to dismiss the complaint. For the reasons stated below, the Court grants APWU's motion.

### Background

    For purposes of the motion to dismiss, the Court accepts as true the facts alleged in Local 7011's complaint. APWU is a national union that represents postal service employees. Am. Compl. ¶ 5. The relationship between APWU and its local unions, including Local 7011, is governed by APWU's constitution, bylaws, and merger guidelines.[1] Those documents were attached to Local 7011's complaint and are

---

[1] Under the APWU constitution, "[t]en (10) or more members in the same postal installation may be chartered as a local." Am. Compl., Ex. A, Art. 16 § 5.

therefore considered part of the pleadings. Fed. R. Civ. P. 10(c).

Local 7011 represented approximately 350 employees who worked for the United States Postal Service at the Chicago International Military Service Center (CIMSC), located at 11600 West Irving Park Road in Chicago, Illinois. Am. Compl. ¶ 2. Donald Greer is the president of Local 7011, and the other individual plaintiffs, Patrick Hooper, Saunder Jones, and Thais Hampton, are members of the local. *Id.* ¶ 3.

On September 14, 2012, the Postal Service notified APWU that it would be consolidating the CIMSC and the Irving Park Road Processing and Distribution Center, located next to the CIMSC. *Id.* ¶ 11. The letter stated that Irving Park Road bargaining unit employees, who were represented by Local 0001 of the APWU, would be involuntarily reassigned to work at the CIMSC. *Id.*

On September 22, 2012, "Local 7011 sent a request to the APWU that it be designated as the exclusive bargaining representative of the merged employees." *Id.* ¶ 16. Local 7011 cited the provision of APWU's merger guidelines that states: "[w]hen the operation of an identified section within a Local is transferred permanently to an existing postal installation represented by a different Local, the gaining Local shall assume representation rights of the employees." *Id.* ¶ 13 (quoting Ex. B, § 2.8(2)(D)). Local 7011 contended that it should assume representation of the employees that were reassigned because it was the gaining local. *Id.* ¶ 15.

"[O]n June 28, 2013, the National Executive Board of the APWU decided to conduct a jurisdictional representation referendum to determine which Local Union would represent all employees at the merged facilities." *Id.* ¶ 18. Local 7011 objected to the referendum on July 13, 2013, arguing that it should represent the employees. In

2

the alternative, Local 7011 argued that the approximately 1,000 members of Local 0001 who worked at facilities other than Irving Park Road should not be allowed to vote. *Id.* ¶ 18–19. The executive board denied the objection on July 30, 2013. That same day, Local 7011 "requested that the National Executive Board reconsider its decision and stated its intention to appeal the decision to the next National Convention, to be held in July or August 2014. Absent reconsideration, Local 7011 requested that the APWU stay the referendum pending consideration by the National Convention." *Id.* ¶ 21. APWU denied both requests, and on August 6, 2013, it "notified Local 7011 that Local 0001 won the referendum by a vote of 199 to 122, with just 323 out of 2040 eligible members voting." *Id.* ¶ 23. Local 7011 appealed the referendum, claiming that many members did not receive ballots or return envelopes and that the certified results were "facially inaccurate." *Id.* ¶ 24. Since that appeal, Local 0001 has assumed representing bargaining employees at the merged facility, including the individual plaintiffs in this case. *Id.* ¶ 25.

Local 7011 filed this suit in October 2013, alleging that APWU violated the union's constitution and merger guidelines. The Court stayed the case in March 2014 after the parties agreed that Local 7011 could present resolutions concerning the merger and referendum at APWU's biennial national convention in July 2014.

After the convention, Local 7011 filed an amended complaint, adding allegations that APWU violated the constitution during the meeting. Local 7011 contends that although it timely submitted materials for the convention, its resolutions were not included in the convention booklet. *Id.* ¶ 27–28. Additionally, "Local 7011's resolutions were not presented until the last issue on the last day of the Convention, after a

substantial number of delegates (over 60%) had left." *Id.* ¶ 31. Local 7011's president, Donald Greer, was allowed only five minutes to speak, while at least three other union representatives spoke against Local 7011's resolutions. *Id.* ¶ 32. Local 7011 contends that "[t]his lack of debate was inconsistent with how the Convention handled all prior resolutions, each of which required a motion to end debate." *Id.* After the presentations, delegates were asked to stand to vote on whether to affirm the executive board's decision to grant Local 0001 responsibility over employees at the merged facility. *Id.* ¶ 33. The general president determined that the delegates had voted to affirm, although Greer thought the vote was "too close to call." *Id.* ¶ 34. A delegate requested a tally, "but the General President stated that the vote was clear and no tally would be held. Thereafter, delegates began leaving the Convention en mass [sic]. Only after a substantial number of delegates had left was a vote held on whether to conduct a tally, which was voted down." *Id.* ¶ 35.

Local 7011 contends that APWU violated the union's constitution and merger guidelines by

> (a) failing to designate Local 7011 as the exclusive bargaining representative of the bargaining unit employees at the CIMSC;
>
> (b) failing to give sufficient notice of the referendum;
>
> (c) failing to conduct a fair referendum;
>
> (d) failing to present Plaintiffs' resolutions at the Convention in good faith;
>
> (e) failing to conduct the Convention consistent with due process and the procedural rules of the Constitution; and
>
> (f) failing to properly tally the vote on the resolution to affirm the decisions of the Executive Board.

*Id.* ¶ 37. Local 7011 requests an injunction requiring APWU to award representation of

4

the merged employees to Local 7011 or restoring the status quo as it existed prior to the August 2013 referendum. Local 7011 also asks the Court to rule that the APWU's merger guidelines require that Local 7011 be awarded representation of the merged employees. Local 7011 also seeks damages in the form of the dues it would have received but for the alleged violations. *Id.* ¶ 38.

## Discussion

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the plaintiffs' allegations as true and draws reasonable inferences in their favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). To survive a motion to dismiss, plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if plaintiffs plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A.    Jurisdiction under 29 U.S.C. § 185**

APWU contends that the Norris–LaGuardia Act, 29 U.S.C. §§ 101–115, prevents the Court from granting injunctive relief to Local 7011. The Court concludes that the Norris–LaGuardia Act does not apply because this case does not involve a "labor dispute" under the Act.

Section 301(a) of the Labor Management Relations Act of 1947, also known as the Taft–Hartley Act, establishes federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor

5

organizations." 29 U.S.C. § 185. APWU contends that despite the Taft–Hartley Act's grant of federal jurisdiction, the Court cannot award injunctive relief, the primary remedy sought by Local 7011, under the Norris–LaGuardia Act.

Passed in 1932, the Norris–LaGuardia Act prohibits a court from issuing an injunction or restraining order "in a case involving or growing out of a labor dispute." *Id.* § 101. "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." *Id.* § 113. The Supreme Court has stated that "[t]he critical element in determining whether the provisions of the Norris–LaGuardia Act apply is whether 'the employer-employee relationship [is] the matrix of the controversy.'" *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712 (1982) (quoting *Columbia River Packers Ass'n, Inc. v. Hinton*, 315 U.S. 143, 147 (1942)).

The employer-employee relationship is not implicated in this case. The employer, the Postal Service, is not involved in the dispute. Local 7011 and the individual plaintiffs do not challenge the terms or conditions of union members' employment with the Postal Service. Thus, the case does not involve the union's efforts "in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment negotiations." 29 U.S.C. § 113.

On the contrary, this case involves an internal union dispute concerning which local union will represent certain workers. This type of dispute does not implicate the policies behind the Norris–LaGuardia Act, which was enacted to guarantee each worker "full freedom of association, self-organization, and designation of representatives of his

6

own choosing, to negotiate the terms and conditions of his employment" and "free[dom] from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 102. Given the plain language and the policies behind the statute, this case does not involve a "labor dispute" under the Act. *See Boys Mkts., Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 250–51 (1970) (noting that "[t]he literal terms of § 4 of the Norris–LaGuardia Act must be accommodated to the subsequently enacted provisions of § 301(a) of the Labor Management Relations Act" and stating that the Act was enacted "to correct the abuses that had resulted from the interjection of the federal judiciary into union-management disputes on the behalf of management" and "to limit severely the power of the federal courts to issue injunctions in any case involving or growing out of any labor dispute" (internal quotation marks and citations omitted)).

Although the Seventh Circuit has not addressed the application of the Norris–LaGuardia Act in a comparable case, a court in this district concluded that the Act was inapplicable to a similar dispute. There, local unions sued the parent international union to prevent their dissolution and consolidation into a single union. *Transp. Workers Union of Am., AFL-CIO, Local Unions 561, 562, 563, 564, 565 v. Transp. Workers Union of Am., AFL-CIO, Int'l*, No. 13 C 01415, 2013 WL 1103875, at *2–3 (N.D. Ill. Mar. 15, 2013). The court questioned whether the internal union dispute implicated the purposes of the Norris–LaGuardia Act, which was premised on "the concern that judges will improvidently use injunctions to restrain collective activity out of hostility for labor." *Id.* at *2 (citing 29 U.S.C. § 102). The court determined that the dispute was not a "labor

7

dispute" under the Act:

> The union's collective bargaining agreement—which is negotiated and administered by the International, not the Locals—is not implicated here, nor are the members' terms or conditions of employment. A restructuring of local unions, even one that involves the dissolution of some, is unlike any of the labor activities that the Norris–LaGuardia Act restricts the courts from enjoining.

*Id.* at *3.[2] The Court finds this reasoning persuasive.

The Court has found a case involving similar facts in which the court ruled that the Norris–LaGuardia Act applied. *See Converso v. United Am. Nurses*, No. 09 C 7336, 2009 WL 4547578, at *3–4 (N.D. Ill. Dec. 3, 2009). There, union officials sued the national union to enjoin the consolidation of registered nurses into "a nationwide 'super-union.'" *Id.* at *1. The court concluded that "this matter appears to involve a labor dispute" under the Act, because "the request for a [temporary restraining order] flows from a disagreement about the association of persons relating to terms and conditions of employment." *Id.* at *4. The court did not analyze the Norris–LaGuardia Act in detail, as the court determined that the plaintiffs' request for a temporary restraining order failed on the merits. *Id.* The Court respectfully disagrees with the analysis in *Converso*.

The Court finds additional support for its conclusion that the Norris–LaGuardia Act does not apply from a 1981 decision of the Supreme Court. The Court allowed a similar internal union dispute to proceed under the Taft–Hartley Act without mentioning the Norris–LaGuardia Act. The Court considered whether a suit for injunctive relief "brought by a local union against its parent international union, alleging a violation of the

---

[2] Although the Seventh Circuit considered the district court's denial of the plaintiffs' motion for a preliminary injunction, the district court's ruling concerning the applicability of the Norris–LaGuardia Act was not challenged on appeal. *See Transp. Workers Union of Am., AFL-CIO v. Transp. Workers Union of Am., AFL-CIO, Int'l Union*, 732 F.3d 832, 833 (7th Cir. 2013).

8

international's constitution, falls within § 301(a) jurisdiction of the federal district courts." *United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Local 334, United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 452 U.S. 615, 616 (1981). The Court held that section 301(a) establishes federal jurisdiction over an alleged violation of a union's constitution. *Id.* at 627. The Court did not mention the Norris–LaGuardia Act in its decision. The Court instead focused on the text of the Taft–Hartley Act, the statute's legislative history, and the unanimity among federal appeals courts in concluding that a "union constitution can be a 'contract between labor organizations' within the meaning of § 301(a)." *Id.* at 619–25 (quoting 29 U.S.C. § 185). The fact that the Supreme Court has allowed a local union to sue its parent union for a violation of the union's constitution suggests that the Norris–LaGuardia Act does not bar Local 7011's suit for injunctive relief.

Local 7011's suit does not involve management or employment conditions, but instead centers around the allegation that APWU violated the union's constitution and merger guidelines. Thus, the Norris–LaGuardia Act does not bar Local 7011's suit.

**B.     Mootness**

APWU also contends that Local 7011's claim for injunctive relief is moot because Local 0001 has already started to represent employees at the merged facility. According to APWU, "the Court cannot unscramble the egg by ordering the unmaking of a consolidation that has already occurred." Def.'s Mem. in Supp. of Mot. to Dismiss at 5.

The Seventh Circuit has held that a court cannot issue a preliminary injunction if

9

the event the plaintiff wishes to enjoin has already occurred. *Transp. Workers Union of Am., AFL-CIO v. Transp. Workers Union of Am., AFL-CIO, Int'l Union*, 732 F.3d 832, 834 (7th Cir. 2013) ("For a preliminary injunction to be effective, it must be issued *prior* to the event the movant wishes to prevent."). In that case, local unions sought to enjoin a consolidation that had already occurred; thus, their request for a preliminary injunction was moot. *Id.* ("[APWU's] intervening consolidation of [the] Local Unions [ ] prevents this Court from maintaining the earlier status quo of the Local Unions."). Based on this rationale, the Court cannot restore Local 7011 to its status quo prior to the merger, because the consolidation has already occurred.

The Seventh Circuit did not end its analysis there, however. The court determined that "[t]hough the Local Unions' request for a preliminary injunction is moot, their 'case as a whole remains alive because other issues have not become moot.'" *Id.* at 834–35 (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981)). Specifically, the plaintiffs asked the court "to order affirmative relief restoring their independent status as local unions based on claimed violations of the [union's] Constitution." *Id.* at 835.

Local 7011 has requested a declaration that the merger guidelines were violated as well as monetary damages in the amount of dues the union would have received but for the alleged violations. These claims for relief are not moot. Although the Court questions whether these remedies would effectively redress the alleged injuries, the Court need not linger on the issue, because Local 7011's claim fails on the merits.

**C.      Local 7011's claims under 29 U.S.C. § 185**

Local 7011 claims that APWU violated its constitution and merger guidelines when it failed to designate Local 7011 to represent employees at the consolidated

10

facility, failed to give sufficient notice of the referendum, failed to conduct a fair referendum, and failed to conduct the national convention in good faith and in accordance with the procedural rules of the constitution. Because APWU's interpretation of the constitution and merger guidelines was reasonable based on the facts alleged in the complaint, Local 7011 has not stated a plausible claim for relief.

Section 301 of the Taft–Hartley Act allows a party to sue for the violation of a contract between labor organizations. 29 U.S.C. § 185. The parties do not dispute that Local 7011 and APWU are labor organizations or that the constitution and merger guidelines are "contract[s] between labor organizations." *See id.* §§ 185, 152(5); *United Ass'n of Journeymen*, 452 U.S. at 627 (concluding that a union constitution can be a contract between labor organizations within the meaning of section 301(a)).

The parties also agree on the applicable standard. "To prevail, a plaintiff must show that the union's interpretation of its own constitution was unreasonable, perhaps even patently unreasonable before we can set it aside." *Transp. Workers Union of Am.*, 732 F.3d at 835 (internal quotation marks omitted). The Seventh Circuit has emphasized that "[a] union's interpretation of its own constitution is entitled to judicial deference. The deference to a union's interpretation reflects a longstanding federal policy of noninterference in internal union affairs." *Id.* (internal quotation marks and citations omitted). This same standard applies to APWU's interpretation of the merger guidelines. *See Air Wis. Pilots Prot. Comm. v. Sanderson*, 909 F.2d 213, 218 (7th Cir. 1990) (describing "the principle that a union's interpretation of its own constitution, by-laws, and other promulgations is entitled to judicial deference; we must be able to call the interpretation unreasonable, perhaps even patently unreasonable, before we can

11

set it aside" (internal quotation marks omitted)).

The Seventh Circuit applied these principles in a case in which a local union sued the union's leadership after the locals were consolidated. "To determine whether the union's interpretation was reasonable or patently unreasonable," the court analyzed "how much authority the [union's] Constitution grants its national leadership." *Transp. Workers Union of Am.*, 732 F.3d at 835 (internal quotation marks omitted). The court found that the constitution conveyed broad power to the union's leadership over local unions and over the interpretation of the constitution. *Id.* The court then analyzed the provisions relating to mergers and dissolutions, and determined that the leadership's actions fell "wholly within the scope of the authority granted to it." *Id.* at 836.

Applying the same framework to this case, APWU's interpretation of its constitution and merger guidelines was reasonable. The constitution does not address the consolidation of local unions or the balance of decision making authority between local unions and national leadership. Thus, as a general matter, the constitution does not appear to limit APWU's control over local unions.

Turning to the specific allegations, Local 7011 first contends that APWU violated the merger guidelines by failing to designate Local 7011 as the representative union for the merged employees at the CIMSC. Local 7011 argues that APWU violated the provision of the merger guidelines that states: "When the operation of an identified section within a Local is transferred permanently to an existing postal installation represented by a different Local, the gaining Local shall assume representation rights of the employees." Am. Compl., Ex. B, § 2.8(2)(D). Local 7011 argues that because Local 0001's members were reassigned to work at the CIMSC, Local 7011 was the gaining

local and should represent those employees.

APWU's determination that section 2.8 did not apply in this case was not unreasonable. APWU concluded that the merger guidelines gave the executive board the authority to order a referendum vote to determine which local would represent the employees after the consolidation. Specifically, APWU points to section 2.8's introduction, which states that "in those circumstances where an existing installation is consolidated or constructed adjacent to or as an extension of an ongoing installation . . . . [s]uch cases will be decided by the National Executive Board on a case-by-case basis." *Id.* at § 2.8. This point is reiterated in the section addressing "[n]ewly consolidated installations:" "These stages do not apply in those circumstances where an existing installation is consolidated . . . adjacent to . . . an ongoing installation. Such cases will be decided by the National Executive Board on a case-by-case basis." *Id.* at § 2.8(2)(A). Because CIMSC was located next to the Irving Park facility, the executive board did not act unreasonably in treating the merger as a consolidation of existing, adjacent installations, which the merger guidelines leave to the executive board's discretion. For this reason, Local 7011 has not stated a viable claim for relief.

The introductions to the merger guidelines and to section 2.8 provide additional support for this conclusion. The introduction to the merger guidelines states that "[n]o merger with or the formation of an Area Local will be permitted unless approval has been requested and granted by the APWU National Secretary-Treasurer pursuant to the following procedures." *Id.* at § 1. Because the union's national leadership must approve all mergers of local unions, it was not unreasonable for APWU to determine the procedure for deciding which local would represent employees at the CIMSC.

The introduction to section 2.8 states that the provision applies "[w]here a new installation that opened after September 22, 1993 was not afforded an opportunity to conduct a jurisdictional referendum vote" or "where two or more independent postal installations are consolidated, resulting in the excessing of employees." *Id.* at § 2.8. This case presents neither scenario; the two postal installations were not new, and the consolidation did not result in the excessing of employees. Thus, it was reasonable for APWU to conclude that the requirements of section 2.8 did not apply. In sum, even assuming the allegations in the complaint are true, APWU did not violate the merger guidelines when it conducted a jurisdictional representation referendum.

In addition to arguing that a referendum should not have been conducted, Local 7011 contends that APWU's notice of the referendum violated the merger guidelines because it did not specify how ballots would be counted. Under section 2.8(2) of the merger guidelines, when two postal installations are consolidated, notice must be posted in all affected offices at least thirty days before the vote "advising on the date, time, and location" of the vote. *Id.* § 2.8(2)(B)(v). The Court has concluded that APWU did not act unreasonably in concluding that section 2.8 of the merger guidelines did not apply. Nonetheless, even if the notice requirement did apply, APWU did not violate it. The merger guidelines do not require notice regarding how ballots will be counted. Local 7011 does not contend that the posted notice omitted the date, time, or location of the vote or that the thirty day requirement was not met. Local 7011 has failed to allege facts tending to show that APWU violated the notice requirement.

Local 7011 also contends that the referendum was not fair, because all members of both locals were allowed to vote. Local 7011 argues that this was unfair because

14

Local 0001 has a much larger membership than Local 7011. However, it was not unreasonable for APWU to invite all members of the two locals to vote. As APWU's president stated in the July 30, 2013 letter denying Local 7011's objections to the referendum, "since each local will be impacted by the jurisdictional assignment and could suffer a loss of members, the [executive board] has chosen to allow all APWU members of the affected locals to have a voice in this matter." Def.'s Mem. in Supp. of Mot. to Dismiss, Ex. B.[3] The conclusion that all members had an interest in the vote was not unreasonable.

    Local 7011 also contends that many union members did not receive a ballot or return envelope and that the results of the referendum were inaccurate. To support this argument, Local 7011 has provided with its response brief the tally sheet from the referendum, in which the votes were not correctly added. APWU argues that the inclusion of this document is misleading, because APWU later issued another tally that corrected typographical errors. APWU provided the corrected tally with its reply brief. A court can consider a document that is not attached to the complaint "without converting the motion into one for summary judgment, so long as the authenticity of the document is unquestioned." *Minch v. City of Chicago*, 486 F.3d 294, 300 (7th Cir. 2007). Because APWU has challenged the exhibit, the Court will not consider the tally sheets.

---

[3] APWU has attached the July 30, 2013 letter to its motion to dismiss. "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir.), *cert. denied*, 135 S. Ct. 286 (2014) (internal quotation marks omitted). Local 7011 refers to the letter in the complaint, and the letter is relevant as to whether APWU's conduct was unreasonable. Am. Compl. ¶ 20. Additionally, Local 7011 has not challenged the authenticity of the letter in its reply brief. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Thus, the Court may consider the letter in ruling on the motion to dismiss.

Even if the votes were not properly tallied, Local 7011 must point to a violation of the merger guidelines or constitution in order to state a claim under section 301. "Section 301 review simply does not include a free-floating procedural fairness standard absent a showing that some provision of the [contract] was violated." *Lippert Tile Co. v. Int'l Union of Bricklayers*, 724 F.3d 939, 948 (7th Cir. 2013). Local 7011 does not identify any provision of the union constitution or merger guidelines that was violated; rather, it contends that the constitution includes an implied fairness requirement. *See Howard v. Weathers*, 139 F.3d 553, 554 (7th Cir. 1998) (finding that "a reasonable interpreter of the union's constitution [could] make finality an implied term of the constitution's provision on special meetings").

Even if there is ambiguity as to whether the constitution includes an implied fairness requirement or whether that requirement was violated, the Court "ask[s] only whether the Union's interpretation is unreasonable." *Fulk v. United Transp. Union*, 160 F.3d 405, 409 (7th Cir. 1998). Any calculation errors were not unreasonable. Local 7011 does not suggest that the result of the referendum would have differed without the alleged inaccuracies. It only states that "the 'certified' results are facially inaccurate." Am. Compl. ¶ 24. And it was not unreasonable for APWU to mail ballots, even though there was a risk that some members would not receive them. Accepting the allegations in the complaint as true, the Court concludes that APWU conducted the referendum in a reasonable manner.

Local 7011 also argues that APWU failed to conduct the national convention in good faith and consistent with due process and the procedural rules of the constitution. Local 7011 complains that APWU scheduled the vote on its resolution on the last day

during the final minutes of the convention when most delegates had left, failed to include its resolution in the convention booklet, and only allowed one person to speak on behalf of the local for five minutes. According to the complaint, this was inconsistent with the way other resolutions had been handled. Again, Local 7011 has not specified any provision of the constitution that APWU violated, and the constitution does not include a fairness or due process requirement. The constitution grants the executive board substantial discretion as to how to administer the national convention. Am. Compl., Ex. A, Art. 5 § 2 ("Arrangements for the administration and conduct of the National Convention shall be under the supervision and authority of the National Executive Board."). Given this broad grant of authority, the Court must give deference to the board's decisions concerning the administration of the convention. *See Transp. Workers Union*, 732 F.3d at 835.

Even if fairness were required, the complaint does not plausibly allege that the administration of the convention was unfair, or more precisely that APWU was unreasonable in believing its actions were fair under the constitution. It was not unfair to schedule Local 7011's resolution at the end of the convention. By necessity, some resolution had to be scheduled last. It was not unfair that only five minutes were allocated for Local 7011's resolution, given that the convention was a national meeting with a busy agenda. Finally, Local 7011 does not explain why the failure to include the resolution in the convention publication was unfair.

Local 7011 also complains that APWU's president violated the constitution when he concluded that the delegates had voted to affirm the executive board's decision and initially refused to consider conducting a tally. Although the president eventually

17

allowed a vote on whether to conduct a tally, according to Local 7011 this was after a "substantial number of delegates had left." Am. Compl. ¶ 35. Local 7011 has not plausibly alleged that either vote violated the constitution. APWU's bylaws require that 25% of the delegates be present at a national convention to constitute a quorum. *Id.*, Ex. A, Art. 2 § 1. Local 7011 does not argue that there was no quorum for the initial vote or the vote on whether to conduct a tally. In fact, the complaint states that "over 60%" of delegates had left. *Id.* ¶ 31. If 60% of the delegates had left, as Local 7011 estimates, there would have been enough left to constitute a quorum. Based on the facts alleged in the complaint, APWU did not violate the union's constitution or bylaws during the national convention.

In sum, accepting the facts alleged in the complaint as true, Local 7011 has not stated a claim for relief under section 301 of the Taft–Hartley Act.

## Conclusion

For the foregoing reasons, the Court grants APWU's motion to dismiss [dkt. no. 34]. Although it is highly unlikely that the defects can be cured by amendment, the Court will give Local 7011 a chance to try. Unless Local 7011 files a proposed amended complaint by no later than March 11, 2015 that states a viable federal claim, the Court will enter judgment in favor of APWU. The case is set for a status hearing on March 20, 2015 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 18, 2014

18